**Michael J. YAMIN and Scott M. Messick, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**No. 97 Civ.2034(LLS).**

United States District Court, S.D. New York.

Nov. 21, 1997.

Mulholland & Hickey, Washington, DC, for Plaintiffs; Gregory K. McGillivary, Molly A. Elkin, Gorlick, Kravitz & Listhaus, New York City, Lawrence A. Kravitz, Mia Bitterman, of Counsel.

U.S. Atty., S.D.N.Y., New York City, for Defendant; David S. Jones, of Counsel.

### Opinion and Order

STANTON, District Judge.

Plaintiffs Yamin and Messick, field agents of the U.S. Department of State, Bureau of Diplomatic Security, New York Field Office, bring this action to obtain overtime compensation at the rate of time-and-a-half under section 7(a) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), which provides:

> (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Defendant United States of America moves to dismiss the complaint, under Fed. R.Civ.P. 12(b)(1), for lack of subject-matter jurisdiction. It argues that it has waived sovereign immunity only to the extent that Foreign Service employees may obtain district court review after they have exhausted the grievance procedures set forth in the Foreign Service Act ("FSA"), 22 U.S.C. §§ 4131–4140, which plaintiffs have not done.

Thus, the only issue on this motion is whether the plaintiffs may press their suit under the FLSA or must defer court review until after they have followed the FSA's grievance procedures, as has traditionally been done.[1]

---

1. An uncontradicted affidavit submitted by the State Department states that in 1996 its grievance staff received "several hundred claims from Foreign Service security agents for overtime pay under the Fair Labor Standards Act."

The question appears to be one of first impression.

1.

"Absent a waiver, sovereign immunity bars the Federal Government and its agencies from suit." *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). Courts do not have jurisdiction over suits against the government unless it has consented to be sued. *Id.* "Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Id.* (citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941) (alteration in original)).

2.

 Title 28 U.S.C. § 1346(a)(2) provides that

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

. . .

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount[2], founded either upon the Constitution, or any Act of Congress. . . .

The United States has thereby waived sovereign immunity for such claims.

Section 16(b) of the FLSA, 29 U.S.C. § 216(b)—unquestionably an "Act of Congress" under 28 U.S.C. § 1346(a)(2)—provides that an action thereunder to recover unpaid overtime compensation (and related relief) may be brought "against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

The provisions of the statute granting jurisdiction, 28 U.S.C. § 1346(a)(2), and the FLSA combine to place plaintiffs' FLSA claims squarely before this court.

3.

 The government argues that nevertheless the FSA requires plaintiffs initially to bring their complaints before the Foreign Service Grievance Board ("Grievance Board"). It concedes that no section of the FSA states that its provisions for Grievance Board review are a Foreign Service employee's exclusive remedy to recover unpaid overtime compensation. Its arguments are more general.

(a) It argues that the FSA should be construed and applied in accordance with the Civil Service Reform Act ("CSRA"), Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), since it was adopted as a "companion measure" to the CSRA. The CSRA states, in pertinent part,

any collective bargaining agreement shall provide procedures for the settlement of grievances. . . . [T]he procedures shall be the exclusive administrative procedures for resolving grievances which fall within its coverage.

5 U.S.C. § 7121(a)(1).

Even if the CSRA model were to be superimposed on FLSA claims, there is no showing that plaintiffs are parties to a collective bargaining agreement, and accordingly no basis for imposing the CSRA's exclusivity of its remedial procedures to this case.

(b) The government cites *Hunter v. United States,* 36 Fed.Cl. 257 (1996), in which the court required a Foreign Service employee to exhaust his Grievance Board administrative remedies. But that plaintiff's claims were brought under the FSA, not the FLSA. *Hunter* has nothing to do with this case. It did not consider, much less rule on, the FLSA. It did not even mention the FLSA.

More to the point is *Ososky v. Wick,* 704 F.2d 1264, 1265 (D.C.Cir.1983), in which the Court of Appeals for the D.C. Circuit treated the Equal Pay Act ("EPA") (an amendment to the FLSA) as enforceable "through the then long familiar FLSA procedures for recovering minimum wages and overtime pay." Of those FLSA procedures, it held:

These procedures do not include an exhaustion requirement. We believe that a comparison of the different remedial provisions and similar histories of the FLSA

**2.** Plaintiffs expressly waive any recovery over $10,000.

and of Title VII, shows that the failure expressly to require exhaustion of claims under the former reflects a deliberate Congressional decision. In 1972 when it extended the scope of Title VII to cover federal employees, Congress added language to the statute expressly requiring federal employees to exhaust administrative remedies before filing an action in federal district court. *Brown v. GSA,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). *See* Equal Employment Opportunity Act, Pub.L. 92–261, § 11 (March 24, 1972), *codified at* 42 U.S.C. § 2000e–16 (c). Against this background, the 1974 amendments extending the FLSA's minimum wage guarantees and discriminatory pay protections to federal employees stand in marked contrast. For, although § 6(b) of the 1974 FLSA amendments, *codified at* 29 U.S.C. § 204(f), authorized the Civil Service Commission (now the Office of Personnel Management) to administer the FLSA, Congress specifically provided that "nothing in this subsection shall be construed to affect the right of an employee to bring an action for unpaid minimum wages, or unpaid overtime compensation, and liquidated damages under § 216(b) of this title." *Id.* And § 216(b), as amended in 1974, provides simply that an action to recover liability under the EPA may be maintained "against any employer (including a public agency) in any Federal or State Court of competent jurisdiction." 29 U.S.C. § 216(b) (1976). Section 216(b) makes no reference to the availability of administrative remedies.

*Id.* at 1265–66.

(c) The government submits legislative colloquy concerning the FSA during which the Deputy Legal Adviser of the State Department stated that the aggrieved party could obtain judicial review "after a grievance decision has been rendered." This adds nothing. There is no dispute that the Grievance Board procedure, with ultimate court review, is available under the FSA's scheme, and is frequently used. The issue is whether it is the exclusive procedure, covering even FLSA claims—a point the legislative extract does not address.

*CONCLUSION*

From pragmatic and policy standpoints, it might be preferable for all pay disputes in the Foreign Service to be processed through its grievance procedures before being heard by the courts. However, the statutes vest the court with jurisdiction over claims of violations of the Fair Labor Standards Act, and the court is obliged to exercise that jurisdiction.

The government's motion to dismiss is denied.

So ordered.